IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

BARBARA ACANFRIO,

    Plaintiff,

vs.                                                      Civ.No. 97-1078 JP/WWD

KENNETH S. APFEL,
COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

## MAGISTRATE JUDGE'S PROPOSED FINDINGS
## AND RECOMMENDED DISPOSITION
### Proposed Findings

    1.  This matter comes before the Court upon plaintiff's Motion to Reverse and Remand for a Rehearing, filed April 22, 1998 [8-1]. The Commissioner denied plaintiff's request for Social Security Disability Insurance ("SSDI") and Supplemental Security Income ("SSI") benefits. Plaintiff, age 44, alleges a disability which commenced May 30, 1993, due to lumbar and cervical facet syndromes, arthritis, sprained ankle joints, irritable bowel syndrome, migraine headaches, bursitis, chronic pain, depression, and difficulty with concentration. Plaintiff has completed high school and has less than a year of college.

    2.  After conducting an administrative hearing, the Commissioner's Administrative Law Judge ("ALJ") denied the applications, concluding that Ms. Acanfrio can return to her past relevant work as a receptionist-secretary, and is not disabled. The Appeals Council denied Plaintiff's request for review of the ALJ's decision, thus the ALJ's decision is the final decision of the Commissioner. Plaintiff now seeks review of that final decision pursuant to 42 U.S.C. §405(g).

  3. The standard of review in social security appeals is whether the Commissioner's final decision, in this case the ALJ's decision, is supported by substantial evidence.  <u>Thompson v. Sullivan</u>, 987 F.2d 1482, 1487 (10th Cir. 1993)(citations omitted).  Additionally, the Commissioner's final decision can be reversed if the ALJ failed to apply the correct legal tests.  <u>Id.</u> (citation omitted).

  4. Plaintiff raises the following allegations of error with respect to the ALJ's decision: (1) the ALJ's finding that Ms. Acanfrio's migraine headaches were not severe is not supported by substantial evidence and is contrary to law; (2) the ALJ did not consider the impact of Ms. Acanfrio's mental impairment on her ability to work and was legal error under the step four analysis; (3) the ALJ's residual functional capacity determination is not supported by substantial evidence; (4) the ALJ's pain analysis is not supported by substantial evidence and is contrary to law; and (5) the ALJ improperly relied on Ms. Acanfrio's alleged ability to home school her children to find that she has the ability to work.

  5. "To qualify for disability benefits, a claimant must establish a severe physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity."  <u>Thompson</u> at 1486 (citing 42 U.S.C. §§ 423 (d)(1)(A) & 1382c(a)(3)(A)).  Social Security Regulations require the Commissioner to evaluate five factors in a specific sequence in analyzing disability applications.  <u>Id</u>.; <u>see</u> 20 C.F.R. §§ 404.1520(a - f); 416.920.  The sequential evaluation process ends if at any step the Commissioner finds that the claimant is disabled or not disabled.  <u>Id</u>. (citations omitted).

  6. At the first four levels of the evaluation, the claimant must show:  (1) that she is not working; (2) that she has an impairment or combination of impairments severe enough to limit the

ability to do basic work activities; (3) that the impairment meets or equals one of the listing of impairments in 20 C.F.R. Pt. 404, Subpt.P, App.1; or (4) that she is unable to perform work done in the past.  At the fifth step, the Commissioner must produce evidence regarding the claimant's ability to perform other work.  Reyes v. Bowen, 845 F.2d 242, 243 (10th Cir. 1988).  In this case, the ALJ ended the inquiry at step four.  See Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988) (if determination can be made at any step, evaluation under subsequent steps is not necessary).

      7.  In May 1995, Plaintiff was thrown off a motorcycle which she and her husband were riding.  She sustained various injuries from the accident, including a hairline fracture in her top vertebra, bursitis, tendonitis and soft tissue injury.  Tr. at 27.  Plaintiff complains of migraine headaches, of severe pain in her neck, shoulders and lower back, Tr. at 49, and that her ankle joints lock up and give out.  Tr. at 27-28; 30.  Her chronic cervical and back pain has been diagnosed as secondary to myofascial pain related to the accident.  Tr. at 190.  Although Ms. Acanfrio had past problems with irritable bowel syndrome, she told the ALJ that she has not had to use medication in connection with this condition for seven months prior to the hearing.  Tr. at 53-54.

      8.  Ms. Acanfrio was not working at the time of the accident, but had last worked in 1992 at a service station and convenience store.  This job was interrupted by gall bladder surgery and she never returned to work, but opted to stay home to be with her son who has attention deficit disorder.  Tr. at 28.  She had also left another job, as a secretary-receptionist at a radio station, for the same reason -- that her son needed her attention.  Tr. at 29.  Plaintiff told the ALJ that her son is "fine" now.  Tr. at 33.  She also told the ALJ that she has not attempted to work

3

since the accident because "it hurts every time I move." Tr. at 46.

  9. Ms. Acanfrio is able to drive 15 or 20 miles to town to do light shopping. Tr. at 33. Her family helps out with the "big shopping" as well as the heavier housekeeping chores. Id. She used to home-school the two children, ages 13 and 15, who still live at home with Plaintiff but testified at the hearing that her husband had taken up this duty for about a year and a half. Id. She spends the morning reading or visiting with her mother-in-law who lives on Plaintiff's back property, walking in her yard or playing a game with her son. Tr. at 38. In the afternoon, she exercises in her small swimming pool, naps for about 50 minutes and continues to lie down for a couple of hours. Tr. at 39. In the evening she watches movies. Ms.Acanfrio stated that although she used to have hobbies, she has none now because she has trouble holding her hand steady. Tr. at 34. She believes that the difficulty she has concentrating, experienced as a need to read the same lines in a book "again and again," is a result of the side effects of the medications she is taking. Tr. at 51-52.

  10. Plaintiff is able to sleep from two to four hours a night if she takes medication. Tr. at 35. She has taken various medications in different combinations in the course of treatment, including Relafen (anti-inflammatory), Darvocet, Valium, Trazodone, Elavil and Proventil (bronchodilator). Tr. at 52, 202, 231. Ms. Acanfrio testified that she can sit or stand without being uncomfortable for 15 minutes, can walk the distance of one acre (in her two-acre lot) twice a day and cannot lift her granddaughter who weighs about 8 or 9 pounds. Tr. at 40. She stated that bending over is difficult and that she feels "pressure" on her lower back and ankles on bending. She also stated she cannot squat or kneel.

  11. Plaintiff claimed to have limited movement in her upper extremities, hands and

4

fingers in that they "move sporadically" and "shake."  She complains of a "constant ache" in her right hand which has affected the legibility of her handwriting. Tr. at 42.  According to Plaintiff, her upper extremity limitations affect how she dresses herself and prevents her from using a curling iron.  Tr. at 51.

12. Treatment has been conservative and aimed at symptomatic relief, including medication, electrical stimulation with a TENS unit, Tr. at 43, 49, and periodic facet steroid blocks administered by Dr. Cohn, a specialist in occupational medicine and also Plaintiff's treating physician. Tr. at 202, 208. The blocks eased her pain a bit, but Plaintiff testified that her pain at the time of the hearing was worse because she had not "been doing anything but taking the medication." Tr. at 41.  She describes her pain as "severe all over" without medication, and "moderate to severe" with medication.  Tr. at 44.

13. Dr. Cohn, whom she still sees as her treating physician, had prescribed physical therapy and traction.  Tr. at 31.  Traction was not pursued as a treatment because of muscle atrophy and soft tissue damage. Ms. Acanfrio was referred to physical therapy, but told the ALJ that she did not attend the sessions because she was sick for three months with irritable bowel syndrome and also that she could not afford physical therapy because insurance did not cover it. Id.

**First Alleged Error - Severity of Migraine Headaches**

14. Plaintiff alleges that the ALJ's finding at step two that Ms. Acanfrio's migraine headaches were not severe is not supported by substantial evidence and is contrary to law.   Step two requires a "de minimis" showing of impairment.  See Hawkins v. Chater, 113 F.3d 1162, 1169 (10th Cir.1997) (citation omitted).  The claimant must show more than the mere presence of

a condition or ailment. Id.

15.  The Commissioner does not dispute that the record contains numerous instances of references to migraines.  Instead, the Commissioner's position is that numerous instances of self-reporting do not constitute sufficient evidence to establish the existence of an impairment. This is not borne out either by the evidence or the ALJ's decision, where the ALJ acknowledges that Plaintiff "has had some diagnoses of a migraine headache problem."  Here, the ALJ concluded that the problem had sufficiently resolved to the extent that it would not impact more than minimally on Plaintiff's residual functional capacity.

16.  Dr. Cohn recognized a possible muscular component to some of Plaintiff's headaches. Tr. at 193 (". . . a portion of [Plaintiff's severe headaches] come from the back of the neck"). Plaintiff also found it difficult to distinguish which pain stemmed from migraine and which started out as neck pain. Tr. at 44.  She told the ALJ that her migraines were "under control" with the use of anti-depressants. Tr. at 44, 231.  Yet the record contains enough evidence of migraine complaints, diagnoses and treatment even after the point anti-depressants were used for treatment that the condition clearly would meet the step two threshold.

17.  The ALJ erred in eliminating migraines as a non-severe impairment at step two.  The impairment should be included further in the sequential evaluation process.   Because step four requires the ALJ to make a detailed analysis of the claimant's impairments and specifically analyze the impact of these impairments on a claimant's ability to do the work she has previously done, see Winfrey v. Chater, 92 F.3d 1017, 1024 (10th Cir.1996), the ALJ in this case should include

the migraines in the step four inquiry.[1]

**Second Alleged Error - Mental Impairment**

18. Plaintiff next alleges that the ALJ did not consider the impact of Ms. Acanfrio's mental impairment on her ability to work and was legal error under the step four analysis. Special procedures must be followed when a record contains evidence of a mental impairment that allegedly prevents claimant from working. Hargis v. Sullivan, 945 F.2d 1482, 1487 (10th Cir. 1991).

19. I find that the ALJ did not err by not considering Plaintiff's mental impairment because there was no evidence that the condition in any way, either allegedly or from evidence in the record, prevented her from working for any period of time, had a significant impact on her ability to work or otherwise impacted in functional limitations in any relevant areas. See 20 C.F.R. Pt.404,Subpt.P, App.1, 12.00C.

20. At the hearing, Plaintiff was equivocal about whether she was depressed.[2] She attributed her feelings to knowing that she could not do anything about her overall health condition. Tr. at 45. Plaintiff points to Dr. Cohn's assessment of her as being "significantly depressed" and prescribing 25 mg. of Trazodone. Tr. at 203. However, in the *same* report, the doctor opined that Plaintiff was "somewhat depressed." Tr. at 202. Thus, the ALJ was not obliged to attach any weight to this treating physician's opinion where the report was internally inconsistent. See Goatcher v. Dep't of Health & Hum. Serv., 52 F.3d 288, 290 (10th Cir. 1995).

---

[1] I am recommending that the step four inquiry be remanded for further factual findings. See, below.

[2] Ms. Acanfrio told the ALJ that ". . . sometimes I feel like I'm in a depression. I just -- I don't know." Tr. at 45.

7

Moreover, Dr. Cohn did not suggest referral or further treatment for this problem and Plaintiff stated that she has never had any psychiatric treatment. Tr. at 47.

21. I note that other than Trazodone, the record indicates that any other anti-depressant medications which Plaintiff took were prescribed either for migraines, for pain or for sleep, and not for depression. In fact, Elavil was prescribed at Plaintiff's own request as a sleep aid although Plaintiff assumed that it might have been prescribed for depression. Tr. at 195; see also Tr. at 117 (Plaintiff's written recording of medications, indicating that Elavil was prescribed for sleep and "also I suppose for mild depression"). Thus, the record contains no evidence showing that the ALJ erred when he did not consider Plaintiff's mental impairment.

**Third Alleged Error - Residual Functional Capacity**

22. Plaintiff contends that the ALJ's determination that Plaintiff has the residual functional capacity for her past relevant work as secretary-receptionist is not supported by substantial evidence.

23. While the claimant retains the burden of showing that he is disabled at step four, the ALJ has a duty "of inquiry and factual development." Washington v. Shalala, 37 F.3d 1437, 1442 (10th Cir. 1994) (citing Henrie v. U.S. Dept. of Health & Hum. Servs., 13 F.3d 359, 361 (10th Cir. 1993); accord, Winfrey v. Chater, 92 F.3d 1017 (10th Cir. 1996); SSR 82-62. At a step four inquiry, the ALJ must obtain adequate "factual information about those work demands which have a bearing on the medically established limitations."

24. The residual functional capacity analysis at step four has three phases: (1) the ALJ must evaluate a claimant's physical and mental residual functional capacity relating to a claimant's ability to work on a regular and continuing basis; (2)he must determine the physical and mental

8

demands of the claimant's past relevant work; and (3) the ALJ determines whether the claimant has the ability to meet the job demands found in phase two despite the mental and/or physical limitations found in phase one.  Winfrey v. Chater, 92 F.3d 1017, 1023  n.4   (10th Cir. 1996).

25.   In his decision the ALJ acknowledged that Plaintiff's ankle problems were "initially a matter of concern," noting that "at one time she was prescribed braces to prevent a further sprain."  Tr. at 15.  At the hearing, Plaintiff was still wearing soft splints around both ankles to keep them from giving out.  Tr. at 50.  The record frequently mentions her ankle problems.  See, e.g., Tr. at 147, 197, 212.  The record also documents problems Plaintiff experienced with her arms and hands, which would be particularly relevant to an ability to work at a secretarial job.  See, e.g., Tr. at 210 (Dr. Cohn's report stating that she "is having significant arm pain and cannot do activities with the arm. . . any repetitive activity worsens her pain."); Tr. at 122, 129,130, 131.

26.   Yet when the ALJ asked Plaintiff about the past jobs she had held, he made no inquiry at all into the specific requirements of her job as secretary-receptionist except for how long she was in the position.  Tr. at 28-29.  The ALJ asked no questions touching on what her various duties were or how much sitting, standing or walking was required for continuous periods.   Thus, I find that the ALJ failed to obtain sufficient factual information regarding the first phase of a residual functional analysis under step four.

27.   The second phase of the analysis is similarly lacking in factual support.  Although the ALJ's inquiry moved in the right direction in relying on Dr. Cohn's objective medical findings ("no significant degenerative changes" and normal clinical laboratory findings), there was no factual basis upon which to make adequate determinations regarding whether any functional limitations existed or what the degree of such limitations were.

28. A residual functional capacity assessment ("RFC") was completed by a physician hired by SSA who reviewed the records. Tr. at 56-63. The fact that the physician did not examine Ms. Acanfrio does not in itself invalidate the assessment. See e.g., Rivera-Torres v. Secretary of Health and Human Services, 837 F.2d 4, 6 (1st Cir.1988) (residual functional capacity assessment need not be from an examining physician). At the hearing level, the ALJ makes the decision regarding residual functional capacity. 20 C.F.R. § 404.1546. This decision, however, must be based on substantial evidence.

29. In this case, the treating physician's notes of Plaintiff's tolerance for sitting and standing ("she has trouble sitting or standing for any length of time because of [pain]") does not conflict with Plaintiff's own testimony of her functional limitations. Tr. at 40, 211. Dr. Cohn also noted that Plaintiff's "overall average pain is 8/10." Tr. at 211.[3] These conclusions are completely at odds with those regarding functional limitations in the RFC done by the non-examining physician hired by SSA, who found that Ms. Acanfrio can lift 20 pounds occasionally, 10 pounds frequently; sit, stand or walk for 6 hours in an 8-hour workday. Tr. at 57. Given this huge inconsistency, together with my findings regarding credibility, see below, I find that the ALJ's residual functional capacity determination is not based on substantial evidence.

**Fourth and Fifth Alleged Error - Pain Analysis (Credibility)**

30. Last, Plaintiff alleges that the ALJ's pain analysis is not supported by substantial evidence and is contrary to law. As part of this contention, Plaintiff argues that the ALJ improperly relied on Ms. Acanfrio's alleged ability to home school her children to find that she

---

[3] This report was generated in November 1994 when Plaintiff was still home schooling her children.

has the ability to work.

31. The ALJ based his determination in part on the "paucity of clinical signs or definitive diagnoses from which to infer disabling pain." Tr. at 14-15. Plaintiff maintains that the lack of objective evidence for Ms. Acanfrio's degree of pain cannot preclude a finding that pain affects her ability to function. Pltff's Brf. at 11. However, although Plaintiff is not required to present objective medical evidence to corroborate the *degree* of pain, the absence of an objective medical basis for the severity of pain may affect the weight to be given to her subjective allegations of pain. Luna v. Bowen, 834 F.2d 161, 165 (10th Cir. 1987). In other words, the determination whether the pain is *significant* does not require corroboration through objective evidence, but rather rests on a consideration of these other factors. See Thompson, 987 F.2d at 1490).

32. Other factors which affect the weight given to subjective complaints and which an ALJ must consider are: nature, location, onset, duration, frequency, radiation and intensity of pain; aggravating factors, adverse side effects of medications, treatment, other than medication, for relief of pain, functional restrictions; and claimant's daily activities. SSR-88-13; see Luna v. Bowen, 834 F.2d 161, 166 (10th Cir. 1987). The problem here is that the ALJ's finding of noncredibility is not based on a full consideration of these factors and lacks substantial evidence to support it.

33. In addition to the paucity of objective evidence, the ALJ relied on Plaintiff's statements that she had left past jobs because she wanted to stay home to take care of her son, and the fact that she was able to home school two children. Tr. at 15. Such activities could properly be considered by the ALJ were it not for the fact that, as Plaintiff points out, Plaintiff's

11

husband had taken over this activity since around January 1995.[4]  Further, ability to home school her children does not provide information as to Plaintiff's functional limitations and part of the necessary inquiry at step four.

34.  While I find that Plaintiff's reason for leaving past jobs might suggest a motivation to obtain benefits that might not result from a severe impairment precluding all work activity, this reason is not sufficient to find her noncredible, given the other factors that the ALJ must consider.  Evidence from the record relative to these other factors (e.g., medications used and needed to keep the pain at a "moderate to severe" level; relief obtained; complaints to treating physicians) indicate that the ALJ's finding of noncredibility was not based on substantial evidence from the record as a whole.  Indeed, the ALJ concedes that Plaintiff's "testimony and submissions" regarding daily activities are not inconsistent with her subjective complaints.  See 20 C.F.R. §§ 404.1529, 416.929 (ALJ considers symptoms, including pain, and the extent to which symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence).  Accordingly, although I find that the ALJ's credibility analysis was not contrary to law, I find that it is not supported by substantial evidence.

35.  In sum, I find that:  (1)  the ALJ's finding that Ms. Acanfrio's migraine headaches were not severe is not supported by substantial evidence; (2) the ALJ did not err when he did not consider the impact of Ms. Acanfrio's mental impairment on her ability to work and was legal error under the step four analysis; (3) the ALJ's residual functional capacity determination is not supported by substantial evidence; (4) the ALJ's pain analysis is not contrary to law, but his

---

[4] Plaintiff continued to home school her two children for a period of time subsequent to her alleged onset date of disability and before her husband took over the duty.  On remand, therefore, this may be considered as part of Plaintiff's daily activities for that period of time.

noncredibility determination is not supported by substantial evidence; and (5) the ALJ improperly relied on Ms. Acanfrio's alleged ability to home school her children to find that she has the ability to work only for the period during which her husband performed this task; consideration of Plaintiff's ability to home school was not error inasmuch as it relates to the period during which Plaintiff was engaged in this activity and also during which Plaintiff alleged to be disabled.

### Recommendation

I recommend that plaintiff's Motion to Reverse and Remand for a Rehearing [8-1] be granted and that this cause be remanded to the Commissioner to: (1) conduct a proper and thorough step four inquiry, including consideration of Plaintiff's migraine headaches as part of the residual functional capacity analysis; and (2) to conduct a credibility inquiry consistent with this opinion.  Timely objections to the foregoing may be made pursuant to 28 U.S.C. § 636(b)(1)(C).

UNITED STATES MAGISTRATE JUDGE